**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Brian C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 25-cv-50035 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Brian C., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A.    Procedural History**

On July 11, 2019, Brian C. ("Plaintiff") filed an application for disability and disability insurance benefits. R. 25. Plaintiff alleged disability beginning on December 2, 2016. *Id.* His application was denied initially, and by an Administrative Law Judge ("ALJ") decision dated May 14, 2021. R. 25-46. On July 17, 2023, the District Court upheld the ALJ's decision and granted the Commissioner's motion for summary judgment. R. 2174-98. On January 17, 2024, the Seventh Circuit granted Plaintiff's joint motion to remand the case and the Appeals Council subsequently issued a remand order on March 12, 2024. R. 2202, 2207-08. In its remand order, the Appeals Council directed the ALJ to consider the medical source opinions and prior administrative medical findings. R. 2208. On August 1, 2024, pursuant to the remand order, ALJ Edward P. Studzinski held a telephonic hearing. R. 2075. Plaintiff appeared, testified, and was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Jacqueline R. Bethell, also testified. *Id.*

On September 25, 2024, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 2075-98. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's brief in support of his motion to reverse and remand the Commissioner's decision [14], the Commissioner's motion for summary judgment and response to Plaintiff's brief [15], and Plaintiff's reply brief [18].

### B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 2, 2016, through his date last insured, March 31, 2020. R. 2077. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and degenerative joint disease, thoracic and lumbar spines; juvenile myoclonic epilepsy; intercostal neuritis, left intercostal nerve, secondary to phenol neurolysis treatment; migraine headache; hypertension; obesity; depression, and anxiety. R. 2078. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 2079.

Before step four, the ALJ found that through the date last insured, Plaintiff had a residual functional capacity ("RFC") to lift or carry up to 20 pounds occasionally and 10 pounds frequently; can stand or walk for a total of about 6 out of 8 hours; can sit for a total of about 6 out of 8 hours; needs to alternate his position between sitting, standing, and walking for no more than five minutes out of every hour; can occasionally climb ramps and stairs and can occasionally stoop, kneel, balance, crouch, and crawl but can never climb ladders, ropes, or scaffolds; is limited to working in non-hazardous environments, i.e., no driving at work, operating machinery, working at unprotected heights, and should avoid concentrated exposure to unguarded hazardous machinery; can understand, remember, and carry out simple instructions; and can use judgment to make simple work-related decisions. R. 2089. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 2096. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mail clerk, office helper, and marker. R. 2097. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since December 2, 2016, the alleged onset date, through March 31, 2020, his date last insured. R. 2098.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the

Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence and did not sufficiently account for his postural difficulties, moderate limitations in concentration, persistence, and pace ("CPP"), and migraine headaches. Plaintiff additionally faults the ALJ's decision for improperly assessing the opinion evidence and his subjective symptoms. The Court finds that the ALJ's decision was supported by substantial evidence and accordingly does not find error.

### RFC Restrictions

Plaintiff argues that the ALJ did not support his RFC finding with substantial evidence. Specifically, Plaintiff faults the ALJ for formulating an RFC that did not account for his limitations in standing or sitting; his moderate limitations in concentration, persistence, and pace ("CPP"); and migraines. The Court finds that the ALJ properly supported his RFC finding with substantial evidence.

A claimant's RFC is the maximum work he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345,

3

352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). Here, the ALJ has said enough to ensure that he considered the totality of Plaintiff's limitations and included all limitations supported by the record in formulating the RFC.

In this case, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and concluded that Plaintiff could perform light work with certain non-exertional restrictions. R. 2089, 2091. According to the Social Security regulations, a job is classified as "light work" if it "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967. A person capable of light work can perform a job which requires "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. The ALJ found partially persuasive the opinions of two state agency medical consultants, Dr. Michael Nenaber and Dr. James Madison, who found a light work RFC and opined that during an 8-hour workday, Plaintiff could sit, stand, and walk for six hours. R. 95, 113 2092. However, the ALJ found the opinions unpersuasive as to their non-exertional restrictions because "the evidence including the [plaintiff's] testimony suggested he required [greater] restrictions than the consultants assessed." R. 2092. Accordingly, the ALJ provided an option that would allow Plaintiff to alternate positions throughout the day. R. 2091.

*Alternate Positions Limitation*

Plaintiff first asserts that substantial evidence did not support the ALJ's finding that he could sustain full-time work at a light level if given the option to alternate positions five minutes every hour. In support, Plaintiff points to evidence that he claims the ALJ overlooked, such as his history of abdominal and back pain, testimony stating he struggled to walk and stand, and medical evidence where providers observed an abnormal gait, tenderness to palpation of the spine, and decrease range of motion. [14], p. 11. The Court finds no error. As an initial matter, while an ALJ must support his conclusions with substantial evidence, an ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and his conclusions."[1] *Bakke*, 62 F.4th at 1066.

Here, the ALJ provided a logical bridge between the evidence and his conclusion that Plaintiff had an RFC for light work so long as he could alternate positions throughout the day. In his decision, the ALJ considered evidence that both supported and contradicted Plaintiff's testimony related to pain and his ability to stand, sit, or walk. For example, the ALJ pointed to the "little documented evidence of treatment" related to Plaintiff's spine-related complaints aside from pain-management appointments but also acknowledged that Plaintiff experienced tenderness to palpation in the spine. R. 2079-80. The ALJ also pointed to medical examinations where Plaintiff

---

[1] Plaintiff at multiple points in his brief states that the ALJ did not sufficiently explain his reasoning or connect evidence he cited in other parts of his decision to his findings. The Court finds that read as whole, the ALJ's decision sufficiently demonstrates his reasoning. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("We do not discount [a review of the evidence] simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."); see *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole.").

demonstrated he could walk unassisted with a regular gait and could rise from an examination table without difficulty. R. 1419, 2080, 2090. As to Plaintiff's abdomen, the ALJ discussed Plaintiff's prior issue with pain but also noted a 2020 appointment where an anesthesiologist did not find "obvious signs his abdomen was causing discomfort." R. 1954, 2081. The ALJ further noted that during the appointment, the anesthesiologist did not observe Plaintiff experiencing difficulty remaining in a seated position. *Id.* As noted above, the ALJ found the state agency medical consultants persuasive to the extent they opined that Plaintiff was capable of light work and could stand or sit for extended periods of time but found that the medical evidence warranted the addition of an option to alternate positions. R. 2092.

As to Plaintiff's complaint that no doctor opined to the specific limitation set by the ALJ and that the sit, stand, and walking limitations were "seemingly based on speculation and lay conjecture," the Court finds the objection misplaced. [14], p. 10. As Plaintiff observes, neither the state agency consultants nor any doctor found that Plaintiff needed to alternate positions. Instead, in setting a more restrictive RFC, the ALJ appeared to balance the conflicting evidence as well as partially credit Plaintiff's testimony[2] that he struggled to stand for extensive periods of time, without needing sitting breaks. R. 2114-15. In support of his finding that Plaintiff would remain on task while alternating positions, the ALJ noted that Plaintiff did not appear to struggle with getting on and off examination tables during appointments. R. 1157-58, 1419, 2090. The Court finds that the ALJ supported the physical restrictions in the RFC with substantial evidence. The ALJ's decision was appropriately based on Plaintiff's statements, his medical records, and medical opinions regarding Plaintiff's functional limitations. Where the record as a whole supported greater limitations, the ALJ departed from the medical opinions and imposed those greater limitations. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians . . . based on his independent review of the full evidentiary record"); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented"). Plaintiff claims that the evidence supported even greater restrictions, but this Court will not re-weigh the evidence. *Jeske*, 955 F.3d at 587.

*Moderate Limitations in Concentration, Persistence, or Pace*

Next, Plaintiff contends that substantial evidence did not support the ALJ's conclusion that simple instructions and simple work-related decisions would accommodate his moderate limitations in CPP.[3] [18], p. 2. The Court finds that the ALJ adequately addressed Plaintiff's

---

[2] The ALJ referenced in passing the "claimant's presentation at the hearing." R. 2091. As the hearing occurred telephonically, the Court takes this statement as referring to Plaintiff's testimony. To the extent any error could be attributed to this statement, the Court would find it harmless as the ALJ sufficiently supported his RFC finding with substantial evidence.

[3] Plaintiff additionally asserts that the Seventh Circuit has "frequently recognized that limitations for 'simple' work tasks are insufficient." [14], p. 4 (citing *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). However, the Seventh Circuit has clarified that the concern regarding limitations to simple work is that "the restriction is used as a one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms." *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020) (citing *Martin v. Saul*, 950 F.3d at 373).

5

moderate limitations in CPP and sufficiently supported his reasoning. When formulating an RFC for a claimant, an ALJ must account for all moderate limitations identified in the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). However, as the Seventh Circuit has noted, a "'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). Further, "'fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.*

Here, the ALJ noted that Plaintiff struggled to complete complex tasks such as managing finances but was able to perform the multitasking necessary to operate a vehicle and participate in a hearing. R. 2088. The ALJ also discussed treatment records describing sessions where Plaintiff had difficulty focusing but contrasted this with mental status findings that were generally normal and treatment notes stating that he could focus when participating in an exercise. *Id.*, R. 2095. The ALJ also considered the opinions of the state agency psychological consultants who found that Plaintiff had mild limitations in the four general areas of functioning. R. 2093-94. However, similar to the ALJ's conclusions regarding physical restrictions, the ALJ determined that the medical evidence, such as treatment notes and Plaintiff's chronic pain, warranted greater mental restrictions. Accordingly, the ALJ found that Plaintiff had moderate limitations in CPP that could be accommodated so long as he did not perform complex tasks.

To further address Plaintiff's pain and attention difficulties, the ALJ added that Plaintiff could never climb ladders, ropes, or scaffolds and was limited to working in non-hazardous environments. R. 2089. Plaintiff contends that these RFC restrictions accounted for workplace safety but not his moderate limitations in CPP. However, as stated above, the ALJ found that Plaintiff occasionally had some difficulties with attention but found that the record generally contained normal mental status findings without attention issues. While Plaintiff may contend that greater or different restrictions were necessary, this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the [ALJ]." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotations and citation omitted). It is up to the ALJ to weigh conflicting evidence and provide a reasonable explanation for his conclusion. This is precisely what the ALJ did here. The ALJ's mental, environmental, and postural restrictions were appropriately based on Plaintiff's statements, treatment records, and Plaintiff's documented history of chronic pain. As he did with the physical RFC limitations, the ALJ departed from the medical opinions in fashioning stricter limitations but properly supported his reasoning with substantial evidence. *See Tutwiler*, 87 F.4th at 859-60; *Burmester*, 920 F.3d at 510.

*Migraine Headaches*

Finally, Plaintiff faults the ALJ for failing to include limitations in the RFC "that were reasonably related to his migraine headaches." [14], p. 14. In particular, Plaintiff claims that the ALJ did not consider the effect of migraines on his attendance or ability to stay on task. The Court finds no error. Throughout his decision, the ALJ discussed Plaintiff's history of migraines, which varied in frequency and intensity. R. 2083-84. The ALJ noted that the medical evidence did not support Plaintiff's claim that his migraines lasted 24 hours at a time but also appeared to indicate

that compliance with medication impacted Plaintiff's symptoms. R. 2090. For example, the ALJ pointed to an appointment in February 2019, where Plaintiff noted episodic migraines but denied complex symptoms and stated that Fiorinal with codeine controlled the symptoms well. R. 1167. Plaintiff later reported frequent migraines at appointments in October 2019 and April 2020, but the nurse practitioner attributed the symptoms to improper use of his medications causing rebound headaches. R. 2004, 2012-13. However, the ALJ noted that at a later appointment, Plaintiff reported improved symptoms and compliance with his medication. R. 2015, 2090. While the ALJ did not find that Plaintiff's migraines were as limiting as alleged, he provided for environmental and postural limitations such as avoiding ladders, ropes, or scaffolds to decrease the chance of injury if a migraine was triggered. To the extent Plaintiff contends that the ALJ should have accounted for migraine-related absences and off-task time, it was Plaintiff's burden to provide evidence that such restrictions were necessary. *Sherice A. v. Dudek*, No. 22 C 5150, 2025 WL 1291731, at *6 (N.D. Ill. May 5, 2025) (citing *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021)) (finding an ALJ did not err by omitting a need to lie down in an RFC finding because plaintiff did not provide evidence supporting the limitation). Accordingly, the Court finds that the ALJ appropriately accounted for Plaintiff's migraines in his RFC finding and supported it with substantial evidence.

### Analysis of Opinion Evidence

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinion evidence from his psychiatric care provider, Jessica Waters, P.A. ("PA Waters"). Specifically, Plaintiff faults the ALJ for failing to analyze whether treatment records from Shannon Hock, LCP, were consistent with PA Waters' opinion. The Court finds that the ALJ appropriately assessed PA Waters' opinion and accordingly finds no error.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how the ALJ considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20 CV 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (citation modified).

The ALJ properly articulated his analysis of the supportability and consistency factors regarding PA Waters' opinion. PA Waters opined that Plaintiff's chronic pain, physical symptoms, and anxiety would make it difficult for him to maintain concentration to complete tasks

7

in a timely manner and that he would be able to perform simple tasks. R. 1932-33. The ALJ found PA Waters' opinion partially persuasive to the extent that she opined Plaintiff had a moderate limitation in concentration, persistence, or pace due to pain and anxiety. R. 2094. However, the ALJ found that the extent of the limitations PA Waters opined to, such as Plaintiff's anxiety, limited attention span, attendance issues, and inability to complete a normal workday, were not fully supported by her treatment notes. R. 1931-33, 2094-95. For example, while PA Waters' treatment notes indicated mixed success in managing the frequency and intensity of Plaintiff's anxiety symptoms, Plaintiff otherwise did not present with deficits in cognition, attention span, and memory. R. 2095; *see e.g.,* R. 2042-43, 2045, 2048-49, 2051-52, 2054-55, 2066-67, 2069. The ALJ also found that PA Waters' opinion was not fully consistent with the complete objective treatment record. R. 2094. For example, the ALJ noted that PA Waters' normal mental status examination findings were consistent with other mental status observations in the record. R. 2095; *see e.g.,* R. 815-16, 1305, 1414. However, the severity of the limitations she opined to were not consistent with the complete objective record, which generally contained normal mental status findings. R. 2094.

Plaintiff nevertheless contends that the ALJ's evaluation of PA Waters' opinion evidence was insufficient because the ALJ did not discuss treatment notes of his counselor, Shannon Hock, which noted Plaintiff had difficulties concentrating. However, earlier in his decision, the ALJ examined Ms. Hock's treatment notes and found that the record generally did not support that Plaintiff had extensive attention difficulties. R. 2086 (reviewing Ms. Hock's findings in connection with the listings analysis as to mental impairments). The Court notes that the ALJ's examination of PA Waters' opinion evidence was thorough and comprehensive. The ALJ was not required to discuss every medical opinion in his examination of PA Waters' opinion but only needed to minimally articulate his reasoning in finding the opinion partially persuasive. Accordingly, the Court finds that the ALJ properly considered the supportability and consistency factors in evaluating PA Waters' opinion.

### **Evaluation of Subjective Symptoms**

Plaintiff argues that "[t]he ALJ provided no analysis of [his] pain" and failed to consider his daily living and medication. [14], p. 13-14. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the

8

ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's pain was adequately supported with evidence and explanation.

Plaintiff asserts that the ALJ did not consider his pain and or daily living activities. However, the ALJ's decision references Plaintiff's pain and its limiting effects. For example, during his analysis of the listings, the ALJ noted Plaintiff's history of chronic pain in his back and abdomen as well as his extensive pain management treatment. R. 2079-80. In considering his daily living activities, the ALJ noted that Plaintiff did not manage finances on his own due to the effect of pain on his ability to focus but could manage the multitasking necessary to operate a vehicle when driving. R. 2088. As stated above, the ALJ assessed Plaintiff's reports that activities such as walking or rising from a seated position made his pain worse but found that treatment records indicated he did not struggle to walk, sit, or stand. R. 2081, 2090. Finally, the ALJ noted function reports filled out by Plaintiff and his wife, which attributed his physical symptoms to his difficulties performing personal care and hygiene without assistance. R. 262, 288, 298, 339, 2088. While the ALJ considered Plaintiff's and his wife's function reports, the ALJ ultimately found that the objective medical evidence as well as the state agency consultants' opinions did not support the severity of the limitations they reported.[4]

Plaintiff also argues that the ALJ did not sufficiently consider how his medications supported his testimony related to chronic pain. However, the ALJ noted Plaintiff's medications, such as Norco, OxyContin, Percocet, extended-release morphine, and CBD oil to manage his pain symptoms. R. 2080. The ALJ additionally noted that in 2018, Plaintiff reported that the medications were "somewhat" helpful. R. 1418, 2080. While the ALJ's discussion of the medications was brief, his discussion of Plaintiff's history of back and abdominal pain indicates he considered pain clinic records that noted that medication helped reduce Plaintiff's severe pain as well as improved his function and quality of life without side effects. R. 1950, 2080. The ALJ's acknowledgment of Plaintiff's pain medications, references to medical appointments that discussed Plaintiff's medication, and his observations that Plaintiff could walk during medical appointments provides the Court with sufficient explanation or support.

The Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. The ALJ appropriately examined Plaintiff's symptoms and their consistency with the record. The ALJ first noted Plaintiff's subjective symptoms, including his reported difficulty concentrating on complex tasks, standing, alternating positions from standing to seated, and walking. R. 2088, 2090. The ALJ assessed these statements while considering the medical records and opinions, activities of daily living, and the ALJ's own findings based on the hearing testimony. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent because they were not as limiting as alleged. R. 2090. Accordingly, the Court finds the ALJ's subjective evaluation fully explained and supported and not patently wrong. *Grotts*, 27 F.4th at 1279.

---

[4] In a previous decision, the District Court found harmless error where the ALJ stated that Plaintiff's wife needed to complete a function-by-function analysis in her function report. R. 2196. The Court concurs with this finding.

9

## CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: February 9, 2026                          ENTER:

                                                     _Margaret J. Schneider_
                                           United States Magistrate Judge